UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

TIMOTHY A. PARIETTI,

                Petitioner,

        v.

UNITED STATES OF AMERICA,

                Respondent.

16 Cr. 373 (PAE)

OPINION & ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

The Court has received a petition for a writ of error *coram nobis* from defendant Timothy Parietti, Dkt. 26, a response from the Government that does not oppose this relief, Dkt. 30, and a reply from Parietti, Dkt. 31. Substantially for the reasons set forth in the unopposed petition, the Court grants this relief.

I. **Background**

    A. **Factual Background and Procedural History**

In brief, on May 26, 2016, Parietti pled guilty before this Court, pursuant to a cooperation agreement, to conspiracy to commit wire and bank fraud. Dkt. 1. The charge to which Parietti pled guilty was based on the theory that he and others at Deutsche Bank ("DB") had caused DB to make false, fraudulent, and misleading submissions to the British Bankers Association ("BBA") with the goal of influencing the daily London Interbank Offered Rate ("LIBOR"). Dkt. 1 ¶¶ 1–2. Parietti later testified at the fall 2018 trial—held before the Honorable Colleen McMahon, United States District Judge—of his alleged co-conspirators Matthew Connolly and Gavin Black, who were convicted of the same offense based on the same theory. Dkt. 17 at 2–3. On February 8, 2019, this Court sentenced Parietti to a term of imprisonment of time served (one

day), followed by a term of supervised release, and to pay a $1 million fine. Dkt. 20. On April 26, 2021, Parietti completed his term of supervised release. Dkt. 26-1 ("Parietti Decl.") ¶ 1.

## II. Discussion

### A. The Second Circuit Decision in *United States v. Connolly*

Parietti's basis for moving for a writ of error *coram nobis* is that the United States Court of Appeals for the Second Circuit, on January 27, 2022, overturned the convictions of Connolly and Black, finding the evidence insufficient as a matter of law to establish that the statements that DB made to the BBA were false, fraudulent, and misleading. *See United States v. Connolly*, 24 F.4th 821, 842–43 (2d Cir. 2022). The Circuit held that although the defendants' practices might have been unfair or dishonest, they did not violate the anti-fraud statutes. *Id.* at 843 ("While defendants' efforts to take advantage of DB's position as a LIBOR panel contributor in order to affect the outcome of contracts to which DB had already agreed may have violated any reasonable notion of fairness, the government's failure to prove that the LIBOR submissions did not comply with the BBA LIBOR Instruction and were false or misleading means it failed to prove conduct that was within the scope of the statute prohibiting wire fraud schemes."). As Parietti points out, the factual and legal theory underlying the *Connolly* indictment was the same one underlying his guilty plea. Dkt. 30 at 1.

### B. Relevant Legal Standard for a Writ of Error *Coram Nobis*

To warrant the extraordinary relief of the grant of a writ of error *coram nobis*, a petitioner "must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by the granting of the writ." *United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000); *see also Doe v. United States*, 915 F.3d 905, 909 (2d Cir. 2019).

### C. Application

Parietti has made these showings here.

As to the first showing, the Second Circuit's decision in *Connolly* conclusively establishes the factual insufficiency of the Government's proof of the scheme to which Parietti pled guilty. Although Parietti's admission during his plea proceeding, standing alone, would have supported the entry of judgment against him for conspiracy to commit wire and bank fraud, the Government proffered during that proceeding that it had sufficient evidence to support such a conviction. *See* Dkt. 26-2 ("Krantz Decl."), Ex. 2 at 40. That representation was material to the Court's decision to accept Parietti's guilty plea, as it likely was to Parietti's decision to plead guilty. With the Circuit—based on its close review of the trial proof—now having exposed the Government's underlying proof as insufficient to prove that offense, Parietti must be viewed as innocent. Under first principles of justice, it would be unjust to maintain his conviction. *See, e.g., Tocci v. United States*, 178 F.Supp.2d 176, 184 (N.D.N.Y. 2001) (granting *coram nobis* petition where the Government "failed to establish the requisite factual basis for the plea"); *see also United States v. Andrades*, 169 F.3d 131, 136 (2d Cir. 1999) (vacating guilty plea where "[t]he district court failed to comply with [Federal Rules of Criminal Procedure] Rule 11(f)'s requirement that the court establish a factual basis for defendant's guilty plea").

Sustaining Parietti's conviction in the wake of the entry of judgments of acquittal in *Connolly* would be all the more unjust in that, unlike Connolly and Black, Parietti cooperated with the Government's investigation and prosecution. The Government's § 5K1.1 sentencing letter, in fact, extensively lauded Parietti's cooperation, including for his having participated in 12 proffer sessions, some lasting multiple days and some occurring several hundred miles away from his home; for his having used his expertise to help the Government "understand the mathematics behind various calculations" in the case; for his having been "responsive and

3

diligent throughout [the] process"; for his having been a "persuasive" trial witness as evidenced by the verdicts against Connolly and Black; and for his having, through his cooperation, "made his best efforts to provide substantial assistance in connection with the investigation and prosecution." *See* Dkt. 17 at 2–3.

As to the second showing, there were sound reasons for Parietti not to have pursued *coram nobis* relief earlier. Had Parietti challenged as deficient the factual basis for his guilty plea prior to his sentencing, the Government likely would have accused him of breaching his cooperation agreement, in which Parietti largely waived his right to collaterally attack his conviction.[1] And afterwards, although Parietti knew that Connolly and Black had appealed from their convictions, those convictions had been sustained in the district court. It was the Second Circuit's decision invalidating their convictions that first gave Parietti a formidable basis on

---

[1] In its memorandum in response to the petition, the Government appears to fault Parietti for not earlier filing a petition under 28 U.S.C. § 2255 challenging the validity of his guilty plea. *See* Dkt. 30 at 11. That argument is as unpersuasive as the grudging quality of the Government's opposition to Parietti's plainly meritorious petition is disappointing. Parietti's cooperation plea agreement largely waived his right his right to pursue post-conviction review, including under § 2255. *See* Parietti Plea Agreement at 3 (Gov. Ex. 1 at the plea hearing). A notable exception was for where such a bid was based on "information establishing the factual innocence of the defendant." *Id.* The Second Circuit's decision in *Connolly* supplied precisely such information, insofar as it held that DB's submissions to the BBA were non-fraudulent, thus opening the door to the present *coram nobis* petition. But the Circuit's decision did not issue until January 2022, some nine months after Parietti's supervised release had been terminated, in April 2021. *See* Dkt. 26-1 at 9 (April 26, 2021 order from this Court, terminating supervised release). With Parietti no longer imprisoned or subject to supervised release, § 2255 relief was no longer available to him. *See* 28 U.S.C. § 2255 ("A prisoner *in custody under sentence of a court* established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." (emphasis added)); *United States v. Rutigliano*, 887 F.3d 98, 105–06 (2d Cir. 2018) (noting that for a sentencing condition to satisfy the "in custody" precondition for a motion to vacate a sentence, "the challenged condition must 'impose a severe restraint on individual liberty or the imminent threat of such a restraint'" (citing *Kaminski v. United States*, 339 F.3d 84, 86–87 (2d Cir. 2003))).

4

which to seek to void his conviction. After that ruling, Parietti moved with dispatch to pursue *coram nobis* relief. As Parietti's counsel has proffered, counsel attempted four times by email and one time by voicemail to contact the Government to discuss the impact of Connolly on Parietti's conviction, but did not receive any response. *See* Krantz Decl. ¶¶ 1–5. Only after the fifth of these inquiries failed to prompt a response did counsel file the petition on Parietti's behalf. *See* Dkt. 26 at 10.

As to the third showing, Parietti demonstrably continues to suffer legal consequences from his conviction. As Parietti's declaration explains, as a result of the conviction, he became disqualified under SEC and FINRA rules from holding any of his prior registrations and licenses. Parietti Decl. ¶¶ 2–3. He had been registered with FINRA (where he held Series 7 and 63 licenses) and the CFTC (where he held a Series 3 license). *Id.* He had also been a Chartered Financial Analyst ("CFA"), but upon his conviction, he had lost his right to use the CFA designation. *Id.* As a result, he has been "unable to re-enter the financial services industry," where, before the Government's investigation and prosecution, he had held a successful career as a trader. *Id.* ¶ 4. *See United States v. Foont*, 901 F.Supp. 729, 734 (S.D.N.Y. 1995), *aff'd*, 93 F.3d 76 (2d Cir. 1996) (finding loss of license to practice in financial services industry a collateral consequence supporting grant of *coram nobis* relief).

Separately, as Parietti attests, his conviction has deprived him of various rights (including to vote and to serve on a jury) under the law of Florida, where he resides. And although Parietti has petitioned for a certificate of restoration of these civil rights, he has been informed by Florida authorities that it could take several years for the investigative process that would precede the restoration of these rights to begin. *See* Parietti Decl. ¶¶ 5–6, Ex. 2. This deprivation too

supports *coram nobis* relief.[2] *See Kyle v. United States*, 288 F.2d 440, 441 (2d Cir. 1961) (per curiam) (describing right to vote as "a substantial civil right" whose "possible deprivation warrants [the court] treating this petition . . . as an application for a writ of error *coram nobis*").

## CONCLUSION

The Court accordingly finds that granting the writ would be in the interests of justice, and that, in light of the decision in *Connolly*, allowing Parietti's conviction to stand would work a profound injustice.

The Court therefore vacates Parietti's guilty plea and judgment of conviction effective immediately, and orders that the Government promptly return to Parietti the $1 million fine that he was ordered to pay as part of his sentence.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: August 5, 2022
       New York, New York

---

[2] Per a July 25, 2022 signed agreement between Parietti and the Government, upon a grant of *coram nobis* relief, the Government will return the $1 million fine to Parietti, and Parietti will forego civil claims against the Government. July 25, 2022 Letter (undocketed as of August 4, 2022).